## WATSON v. GRAY.

### December, 1868.

The employer of a building contractor, authorized the contractor to buy lumber, and give an order upon him (the employer), for the price, promising to pay, and charge it upon the contract. The contractor bought the lumber on the credit of the employer's name, and, after it was delivered upon the employer's premises, the bill for the lumber was presented to the employer, who then promised verbally to pay it. *Held*, that although the employer was not rendered liable by the purchase and delivery in his name, instead of in the contractor's name with an order on him for payment,—his subsequent promise to pay operated as a waiver of the order, and a ratification of the contractors' agency in the purchase.

James H. Watson and others sued Daniel H. Gray, in the city court of Brooklyn, for goods sold. It appeared that one Matthews had contracted with Gray to alter Gray's house, and applied to Gray for aid in obtaining the lumber necessary. Gray said to him "Go to any lumber yard and get the lumber and give them an order on me, and I will pay for it, and

deduct it from the contract." Matthews, as it appeared, at least according to part of the testimony on the trial, instead of giving his order for lumber, which he consequently bought, bought the lumber from plaintiffs, on Gray's credit, and plaintiffs, trusting to that credit on Matthews' representations, delivered it on defendant's premises. At the time of delivering it, and after the deposit of the lumber on the premises, the bill therefor, made out against Gray, was presented to Gray, and he verbally promised to pay it.

. *The supreme court,* on appeal, reversed a judgment for plaintiffs, which the city court gave. Plaintiffs appealed.

DWIGHT, J.—It was considered, in the opinion pronounced at the general term, that the motion for a nonsuit was properly denied for the reason that there was evidence tending to show that Matthews had authority to get lumber on the defendant's credit ; but it was said that the subsequent evidence presented a different aspect of the case, viz.: that the direction, given by the defendant to Matthews, was to go to a lumber yard and buy the lumber for himself, giving an order on the defendant to pay for it. Assuming this to be the true aspect of the case, and that Matthews had, therefore, no authority to buy lumber on the defendant's credit, it was held, that the court below erred in refusing to charge in both respects, as requested by the defendant ; and the judgment was reversed on that ground. I think the reversal was error. It can not be claimed that the evidence on the part of the defendant was conclusive, on the question of the authority given to Matthews. Whatever evidence there was in the case, at the time of the motion for a nonsuit, tending to show that Matthews had authority to buy on defendant's credit, remained in the case at the time of the request to charge, and though it had been contradicted by the defendant, it was plainly a question for the jury, which statement was a true one, and what Matthews' authority really was. It would, therefore, have been error for the court to charge in accordance with any request which assumed either of the aspects of the case to be the correct one.

But even if the evidence had been conclusive, that Mat-

thews' only authority was to buy on his own credit, giving an order on the defendant in payment of his debt, yet if he did, in contravention or excess of his authority, or without any authority at all, buy for the defendant, and on his credit, it was possible for the defendant afterward to ratify such unauthorized act, and to bind himself, though he was not bound by the act of Matthews. And it seems to me that there was evidence in this case amply sufficient, if believed, to warrant the jury in finding such a ratification. In the first place, it appears, without dispute, that Matthews did buy the lumber on the credit of the defendant, and that the plaintiffs, trusting to that credit, delivered the lumber on the defendant's premises. We have then the testimony of the carman, who drew the lumber, that at the time of delivering it, he presented a bill of it to the defendant, made out in items, charged to the defendant " per Matthews," and that the defendant, after looking at the bill, the lumber itself being in sight, promised to pay it.

If such were the facts, the ratification of Matthews' act of agency was complete, and the liability of the defendant was fixed. The ratification was with full knowledge of all the facts. The defendant knew that Matthews had ordered the lumber ; that he had ordered it on his, the defendant's, credit, and that it had been charged to him and delivered to him there, upon his premises. He had before him a bill of items of the purchase, and the lumber itself was present for his inspection. Matthews corroborated the carman as to the presentation of the bill to the defendant, and a salesman of the plaintiffs testified, that, a short time afterward, he again presented the same bill to the defendant, and he again promised to pay it. With this evidence in the case, which, though contradicted by the defendant, the jury had a right to believe, it would have been manifest error for the court to charge as requested, that, if the defendant was not liable for the lumber at the time of its delivery, there was nothing in what subsequently occurred to make him liable, and equally error to charge, that the defendant's acts and declarations were no waiver of his right to insist upon having an order from Matthews for the payment of the bill. I think the whole case was properly submitted to the jury, first, to say what Matthews' authority was, and, second,

even if he had acted in contravention or excess of his authority, whether the defendant had not subsequently ratified his act, and made himself liable for the debt.

If these views were correct, the judgment and order of the general term should be reversed, and the judgment of the court below affirmed.

GROVER J.—The motion to dismiss the complaint was properly denied. Evidence had been given by the plaintiffs, tending to show that Matthews purchased the lumber of them in the name of and upon the credit of the defendant; that a bill was made of it against the defendant, and delivered by the plaintiffs to their cartman to present to the defendant at the time he delivered the lumber; that the cartman unloaded the lumber upon the sidewalk upon defendant's premises; that he then presented the bill to the defendant, who said, "Matty (Matthews) pay this;" to which the cartman replied, "He says you pay it," and was going to take back the bill, when the defendant said, "Never mind, I will see that Mr. Watson gets his money," and retained the bill. This was evidence proper to be submitted to the jury, for them to determine whether the defendant had not given to Matthews authority to purchase the lumber for him, upon his credit, or that, knowing he had so purchased of the plaintiff, of a ratification of such purchase.

Various exceptions were taken by the defendant's counsel to the charge of the judge. To understand these exceptions, it is necessary to consider them in reference to the evidence. From that, it appears that Matthews had made a contract with defendant to find the materials and do a job of carpenter work upon a building for defendant; that Matthews informed the defendant that he could not procure the lumber; that defendant gave him his address, and told him he could upon that buy lumber at any yard; to go and buy it, and draw an order on him for the price, and he would pay it, and apply the amount upon the contract. The court, among other things, charged the jury that if Matthews, under this authority, had drawn an order upon the defendant, for the price of the lumber purchased of plaintiff, and delivered the same to

the plaintiff, and he presented it to defendant in a proper time, the plaintiff could have recovered of defendant in case he refused to accept and pay the order. To this part of the charge, the counsel for the defendant excepted. It would appear that this was wholly immaterial, inasmuch as no such order was ever drawn or presented; but it became material in consequence of the further charge in relation to a waiver of the order by defendant. The correctness of the former portion of the charge depends upon the construction of the authority given by defendant to Matthews. If by that, is to be understood that the defendant promised Matthews that if he bought lumber for himself, upon his own credit, and drew upon the defendant for his debt so contracted, he, the defendant, would pay the draft, the charge is erroneous. The defendant would not be liable upon his verbal promise to accept and pay, and the plaintiff could maintain no action against him upon his refusal. But if it constituted Matthews the agent of the defendant to buy lumber upon his credit, he undertaking to pay therefor, upon being presented with the order of Matthews, drawn upon him therefor, the charge was correct. It was the promise of the defendant to pay his own debt in this particular, and was binding upon the defendant. The facts and circumstances satisfy me that the latter was the true intention of the parties. Matthews told the defendant he could not procure the lumber. That was equivalent to saying that he had no means to pay, and no credit; whereupon the authority was given. If this authority did not enable Matthews to pledge the credit of the defendant for the lumber, it would not in any way facilitate his getting it, and would have been substantially useless. It was important for the defendant to have the order, as that would be a voucher, showing his payment to Matthews upon the contract.

The court charged that the defendant might waive the order. The defendant's counsel requested the court to charge that there was no evidence of such waiver. The court refused so to charge, and submitted to the jury as a question of fact, whether he had waived it. If the construction I have put upon the contract is correct, this part of the charge is so also. By that, this was the debt of the defendant, which he had

order. The defendant's counsel requested the court to charge that there was no evidence of such waiver. The court refused so to charge, and submitted to the jury as a question of fact, whether he had waived it. If the construction I have put upon the contract is correct, this part of the charge is so also. By that, this was the debt of the defendant, which he had undertaken to pay upon being presented with the order, and it is obvious that he had the right to waive this, and his promise, upon being presented with the bill by the plaintiff's cartmar, to see it paid, as testified by the cartman, was evidence of such waiver. The same reasoning furnishes an answer to the exceptions taken to the refusal of the judge to charge, that, unless the waiver of the order was made before the delivery of the lumber, it was void. This exception is based upon the idea that the lumber was purchased by Matthews upon his credit, and the debt therefore his, and that consequently any undertaking by the defendant to pay it is within the statute of frauds. In the view I take, the debt was the defendant's, and there was no liability against him (Matthews) except to give the order if requested, that the plaintiff could enforce.

The judgment of the supreme court should be reversed, and that of the city court of Brooklyn affirmed.

A majority of the judges concurred in this conclusion.

Judgment accordingly.